In the Interest of **H.B.** and **H.D.,**

**Roxie Fausnaught, Appellant,**

v.

**The Newton County Juvenile Office, Respondent.**

Nos. 26446, 26449.

Missouri Court of Appeals,
Southern District,
Division One.

June 29, 2005.

Appellant, pro se.

*No Appearance for Respondent.*

Before GARRISON, P.J., PREWITT, J., and RAHMEYER, J.

PER CURIAM.

Roxie Fausnaught ("Appellant"), maternal grandmother of H.B. and H.D., filed a motion to intervene in cases pending in the Circuit Court of Newton County in which her four grandchildren were placed in foster care after a protective custody hearing was held on April 22, 2004, due to an emergency removal by the Division of Family Services ("DFS") on April 9, 2004. Her motion to intervene was denied and she now appeals the denial *pro se.* We have consolidated the two appeals.

■ The record is devoid of any evidence regarding the type of case from which Appellant appeals. While the record reveals that her four grandchildren were taken from her daughter and placed in protective custody, the legal file provides no indication as to whether or not Appellant would have a right to intervene. Appellant only requested a legal file from the trial court from April 9, 2004, until the date her appeal was filed. Nothing in the docket sheet guides us to understand the issues in the case Appellant appeals. Further, the notice of appeal only provides that this was a juvenile case where the judge ruled that the natural grandparent could not intervene.

■ It is necessary that we address obvious deficiencies in Appellant's brief. Both attorneys and *pro se* appellants are held to the same procedural rules, thus *pro se* appellants do not receive preferential treatment regarding compliance with these rules. *Hardin v. State,* 51 S.W.3d 129, 130 (Mo.App. W.D.2001). Due to multiple violations of the Rules of Civil Procedure in Appellant's brief, we dismiss the appeal.

■ In this case, Appellant did not submit a complete record on appeal. A trial transcript must be submitted as part of the record on appeal in order for this Court to make a determination of the issues raised. *State v. Logan,* 46 S.W.3d 590, 591 (Mo.App. E.D.2001); Rule 81.12(a).[1] Appellant admits in her brief that she did not file a transcript, saying "Appellant also was unable to purchase a trial transcript thanks to Judge Selby's refusal to allow Appellant's lawful *in forma pauperis* status." Rule 81.12(a) states:

> The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision.

The docket sheet stated that the trial court denied Appellant's motion to intervene because "[i]ntervener [sic] resides with alleged perpetrator[.]" We cannot begin to determine whether this ruling was erroneous without a complete record. It is the Appellant's responsibility to provide all documents in the record necessary to decide the issues. Rule 81.12(c). Without this information, we are unable to determine whether the trial court erred, thus leaving nothing for this Court to review. *Id.*

■ In addition, a violation of Rule 84.04 is grounds for us to dismiss an appeal. *Stickley v. Auto Credit, Inc.,* 53 S.W.3d 560, 562 (Mo.App. W.D.2001). Here, Appellant's points relied on fail to comply with the requirements of Rule 84.04. The nine points relied on in Appellant's brief state:

> 1. The trial court erred in dismissing Appellant's Motion to Intervene by un-

1. Reference to rules are to Missouri Rules of Civil Procedure (2004).

lawfully claiming that since Appellant 'lived with alleged perpetrator' prior to the scheduled Adjudication Hearing, that the trial court was proceeding on the basis of that which hadn't been proven, thus making a judgment *ex parte* on that which hadn't been proven yet, but in addition allowing the violation of RSMo 210.183 requiring the Newton County Juvenile Office and Children's Division investigators to provide a written description of the investigation process. Also lacking was any attempt to complete the investigation within 30 days or a ninety day report with the results according to the dictates of Revised Statute of Missouri (RSMo) § 210.183. Therefore, there being no lawfully accused 'alleged perpetrator,' Appellant couldn't have her motion to intervene lawfully denied on that basis by the Newton County Juvenile Division trial court.

2. The trial court erred in dismissing Appellant's Motion to Intervene by unlawfully claiming that since Appellant "states purpose was for discover" that this was another reason for denying Appellant's Motion To Intervene.

3. The trial court erred before dismissing Appellant's Motion to Intervene unlawfully as proven by his conduct in having Appellant's domestic partner falsely arrested on April 15, 2004, covering up with this false arrest by means of threatening Appellant with bogus and unlawful contempt of court charges, of allowing the Division III court clerks to tamper with the official records and refusing to release these records to legitimate parties to this action, and again threatening Appellant's domestic partner with false arrest and contempt of court.

4. The trial court erred after having unlawfully destroyed Appellant's Motion to Intervene, Judge Kevin Lee Selby denied Appellant's right to file a Notice of Appeal *in forma pauperis*, without even bothering to ask Appellant her financial circumstances as being solely on a VA widow's pension. Then, upon receipt of a letter from Appellant notifying the Newton County Juvenile Court that she could only afford to borrow from Appellant's domestic partner the $70 docket fee for only two grandchildren, Judge Selby justified his refusal by claiming to know the circumstances behind Appellant's lawyer, who Judge Selby had rendered worthless in representing her. Appellant also was unable to purchase a trial transcript thanks to Judge Selby's refusal to allow Appellant's lawful *in forma pauperis* status.

5. The trial court erred after dismissing Appellant's Motion to Intervene unlawfully as proven by his conduct in refusing to initially sign a final judgment order, in allowing his court clerks to refuse to provide the legal files for Appellant's Record on Appeal and in threatening Appellant's domestic partner, Martin Lindstedt from helping Appellant with her appeal with false arrest and contempt of court for entering the Division III clerk's office.

6. The trial court erred in appointing as *guardian ad litem* Attorney Anne Wells given that she had a conflict of interest in that she unlawfully as an appointed municipal judge had threatened to put into jail unless Appellants [sic] domestic partner Martin Lindstedt left an open public municipal court in Granby, Missouri on Sept. 10, 2003 and had falsely arrested and jailed Martin Lindstedt on Feb. 23, 2004 for 'Disturbing a Judicial Proceeding' when he argued with Attorney Wells over transferring four traffic tickets from Diamond, Missouri to Newton County for jury trial. While these false charges were dismissed, however, Attorney Wells should have revealed her conflict of interest and

refused to be *guardian ad litem* given her past and present conflicts against Appellant's domestic partner.

7. The trial court erred in allowing the Newton County Juvenile Office's Assistant Prosecuting Attorney Bill Dobbs to prosecute this case on behalf of the Juvenile Office and Children's Division of Social Services given that in the case of *State of Missouri v. Luper M. Baldwin*, CR400–2353FX, Attorney Bill Dobbs allowed Luper M. Baldwin, who confessed to molesting H.D., one of the children party to this case, to escape trial by jury based upon nothing more than the motion of Luper Baldwin's public defender, Kathy Byrnes–Ales in favor of no punishment at all.

In addition, when Appellant's domestic partner asked for a copy of this open record, Newton County Prosecuting Attorney Bill Dobbs tampered with the official record in an attempt to cover up for the public defender by refusing to release the Motion to Strike Trial Setting filed Nov. 29, 2001 and to cover up for the juvenile judge Don Killebrew's signing that Motion. It is unlawful and immoral to on the one hand allow confessed child molesters who molested Appellant's granddaughter to escape any punishment or even trial on the one hand, and then to allow Bill Dobbs to protect the Juvenile Officers and social workers from having to obey the law regarding giving lawful notice under Revised Statute of Missouri (RSMo) § 210.152.2 and Revised Statute of Missouri (RSMo) § 210.183 to Appellant's domestic partner unlawfully accused of being an 'alleged perpetrator.' Attorney Bill Dobbs also has committed the Class A misdemeanor of tampering with a public record under RSMo § 575.110 by trying to suppress or conceal any public record, i.e., his crimes in collusion with the public defender in covering up *State of Missouri v. Luper M. Baldwin*,

CR400–2353FX, in order to advance this present case against Appellant and the interests of her grandchildren.

8. Appellant submits that the trial court, the Newton County Division III Juvenile Court with Judge Kevin Lee Selby presiding, along with the Newton County Juvenile Office, its Juvenile Officers Pat Stuart, David Jones, Candi Butts, Cathy Gorham, its Prosecuting Attorney Bill Dobbs and the Newton County Children's Division caseworkers Doug Baugh, Linda Rasmussen, Rocky Macy, and *guardian ad litem* Attorney Anne Wells haven't made any 'errors' at all, but rather that they have conspired to steal Appellant's grandchildren, destroy Appellant's family and genetic future, and try to railroad Appellant's domestic partner Martin Lindstedt into prison and have him murdered in prison, for no other reason than because they like to steal and destroy the families of the poor and their political enemies for their own political agenda and self-interest.

9. Appellant submits that the best interest of her grandchildren is also in the best interests of the state, given that no government nor its criminal court system can long endure a state of affairs wherein the government and its agents are seen kidnapping and buying and selling the children of its poor and political enemies.

Rule 84.04(d) sets the guidelines for an appellant regarding her points on appeal. It states:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Here, Appellant's points relied on fail to comply with the requirements delineated in Rule 84.04(d). Appellant's points do not identify the rule of law the trial court should have applied, nor do they specify the evidentiary basis supporting the application of the rule of law suggested. *See* Rule 84.04(d)(1). They also fail to set out the legal bases for reversal and explain in summary fashion why, in the context of the case, reversal is mandated on the legal grounds asserted. *See Lemay v. Hardin,* 108 S.W.3d 705, 709 (Mo.App. W.D.2003). "It is not sufficient to merely set out what the alleged errors are, as [Appellant] has done in this case, without stating why the ruling is erroneous." *Murphy v. Aetna Cas. & Sur. Co.,* 955 S.W.2d 949, 950 (Mo. App. S.D.1997). Further, Appellant's points do not intelligibly identify the issues she is pursuing on appeal. Lastly, Appellant's points relied on violate the proscription in Rule 84.04(d)(4) that "[a]bstract statements of law, standing alone, do not comply with this rule." We cannot begin to interpret Appellant's points as stated because we would be forced to act as an advocate for Appellant. "It is not the function of the appellate court to serve as advocate for any party to an appeal." *Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo. App. E.D.1999).

■ Second, Appellant's statement of facts is insufficient. Rule 84.04(c) instructs that the "statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination *without argument.*" (Emphasis added). The purpose of the statement of facts is to provide an immediate, accurate, complete and unbiased understanding of the facts. *Kent v. Charlie Chicken, II, Inc.,* 972 S.W.2d 513, 515 (Mo. App. E.D.1998). In her statement of facts, Appellant argues that she was unable to remove her grandchildren from foster care. She claims it was "due to the unlawful intransigence of the Juvenile Court judge [sic] Kevin Lee Selby and his minions, Appellant's attempt to Intervene and gain discovery were unlawfully negated by Judge Selby." Appellant also states that "[a] relative made a hotline call falsely alleging that the place was dirty because she had the hopes of taking Amalie Baldwin's two youngest children and getting on welfare with them in late 2001." Appellant not only fails to provide an unbiased and concise statement of facts, she also includes facts seemingly irrelevant to the issues she is raising on appeal. *See White v. Darrington,* 91 S.W.3d 718, 722 (Mo. App. W.D.2002).

Rule 84.04(i) further instructs that the statement of facts is to include specific page references to the legal file or the transcript. Appellant provides a timeline of events that led to her grandchildren being placed in foster care, but fails to provide any specific page references to the record on appeal in her statement of facts. Violations of Rule 84.04(c) and Rule 84.04(i) constitute grounds for dismissal of an appeal. *Kent,* 972 S.W.2d at 515.

■ Further, Appellant's argument fails to comply with Rule 84.04(e), which requires the argument section of the brief to include a concise statement of the applicable standard of review for each claim of error. *See Faulkerson v. Norman,* 77

S.W.3d 43, 45 (Mo.App. E.D.2002). In addition, "[a]n argument should show how the principles of law and the facts of the case interact." *Boyd v. Boyd,* 134 S.W.3d 820, 824 (Mo.App. W.D.2004). While Appellant includes some citations to authority, such citations are misguided and are inapplicable to her claim of error. She cites one case for the proposition that a denial of a motion to intervene is appealable, however, her other citations to authority include statutes without any explanation as to how the law and the facts of her case interact. She does not explain how these cases support her contention that the trial court erred in denying her motion to intervene. *See Patterson v. Waterman,* 96 S.W.3d 177, 179 (Mo.App. S.D.2003). When an appellant does not cite relevant authority in support of her position, or explain its absence, we are justified in considering the point abandoned. *Schubert v. Trailmobile Trailer, L.L.C.,* 111 S.W.3d 897, 906 (Mo.App. S.D. 2003). "[A]llegations of error not briefed or not properly briefed shall not be considered in any civil appeal." Rule 84.13(a).

Although we are acutely aware of the problems faced by *pro se* litigants, Appellant's *pro se* status does not excuse her from her compliance with Rule 84.04. *See Speer v. K & B Leather Co.,* 150 S.W.3d 387, 388 (Mo.App. S.D.2004). As a result of numerous violations in Appellant's brief, nothing is preserved for our review. We dismiss the appeal.